Case number 19-5693, United States of America v. Angela Suddarth. Argument not to exceed 15 minutes. Mr. Stryance, you may proceed for the appellant. Thank you. Good morning, Your Honors. Good morning. Peter Stryance of the Nashville, Tennessee Bar, here on behalf of defendant appellant Angela Suddarth. I think the lesson of this case is that you need to be aware, if you get involved in a business transaction with ECHO Global Logistics, from looking at the record in this case, I think the panel can see that Ms. Suddarth felt the full force of ECHO Global Logistics, both in the Northern District of Illinois civil action and then the remarkable indictment in the Middle District of Tennessee, which was really a complete adoption of the civil action in the Northern District of Illinois. District Judge Trauger was moved to make the observation at sentencing in this case that based on her experience as a former assistant United States attorney, as I am, she felt like the case had been grossly overcharged, and she was taken by the fact that the government accepted the investigation of the civil lawyers in the Northern District of Illinois case. I think she used the phrase adopted it hook, line, and sinker and turned it into a criminal indictment against Ms. Suddarth without really any independent investigation done by any of the agents that were present at the trial. Ms. Suddarth was charged in a 22-count indictment. There were many mortal sins that were alleged in the indictment, wire fraud, mail fraud, aggravated identity theft, money laundering. Ironically, she was acquitted of all of the very serious charges, and she was convicted under some unusual circumstances of making a false declaration in an affidavit that was submitted by her lawyer, who remarkably testified against her twice at the civil trial in the Middle District of Tennessee, once in the government's case in chief and later when he appeared in rebuttal. It was, in my experience, a very strange trial. The government rested really after only calling a few witnesses. I put on my proof, and then we were treated to some days of rebuttal testimony. After the eight-day trial, Ms. Suddarth was acquitted of 21 of the counts and convicted of – I think we've all read the – Yes, sir. Why don't you cut to the chase on count 18? Because I think that's what you're trying to undo, not what you won on. Thank you, Judge. Count 18, it's a very straightforward argument. The court will need to – and I think you have – read the affidavit that was submitted by her Nashville lawyer that basically said, hey, we run a little business in Middle Tennessee. We're a trucking and logistics brokerage company, and we do our accounting on an old-school cash basis method. Now, in the course of this asset transaction, the big boys from Chicago, Echo Global Logistics, wanted those numbers expressed in an accrual basis, and that's what they did. She submits an affidavit that was prepared by her Nashville lawyer. It was sent through the ECF system to the Northern District of Illinois in connection with that civil action where she very plainly stated that. We've historically done our accounting – Can I ask you about Exhibits 1 and 2 that were presented at trial? Those exhibits contained – the information was in an accrual basis, correct, the accounting? Yes, Sean. And so were those presented in accordance with the asset purchase agreement? They were, and significantly the controller for Echo Global Logistics took the information that Ms. Sutter had transmitted via e-mail and turned it into the profit and loss statement in the convention that they wanted, which was the accrual basis accounting method. Did she present it to them in an accrual basis? That's the way they requested it, and that's what she did. But she made it clear to them that we operate on a cash basis. Did they – did she have – did Shipper Direct have cash basis accounting statements? They had to – The balance sheet, did they keep an income statement in a cash basis? That's how they ran their business. Is any of that in the record? Is there – Well, her testimony is in the record, and the person that did the due diligence for Echo Global Logistics and spent weeks at their office in a little town outside of Nashville testified that all of the documents that he needed to see on the due diligence list were provided and that no one at Ms. Sutter's company – his name is Mike Bloss for the record. But you're saying that – I'm sorry to interrupt, but you're saying that every exhibit that's in the record that says on its accrual basis, those were all provided in accordance with or consistent with her declaration that they asked for my numbers in an accrual basis, and that's what those numbers reflect. But we always kept our numbers on a cash basis. Right, and I think that's what the challenged affidavit speaks to. She makes it clear in the affidavit that they were a cash basis company, but that Echo requested it in the convention of accrual, and that's what they did. But I think one of the things you all will be deciding is whether – first of all, is it a false statement? Can I ask you a question? Did she prepare Exhibits 1 and 2? No. Did someone in her company prepare them? No. Those exhibits were prepared by Echo Global Logistics. The then-controller, he got a raise after this case, prepared Exhibits 1 and 2. And those were sort of the cornerstone exhibits for the United States. Are you saying that he prepared them during due diligence using the information that he got from her? From a number of different sources. They had a man on the ground in Gallatin, Tennessee, a man by the name of Mike Bloss, that was charged with the responsibility of doing the due diligence. He gathered all the records. So basically we're just talking about ledgers, right? I mean, you're not – if you're cash basis, you don't have any AR, you don't have accounts payable. All you have are money in, money out, right? But they had some of those things, Your Honor, as well. They had records of a business that were available to Echo. They searched until their heart was content, and then they put together the profit and loss statements that were used for the closing. But these counts, quite frankly, I think it was 17, 18, and 19, were really an afterthought at the trial. The government gave it very short shrift in their opening statement. They mentioned that you may hear – told the jury you may hear about an affidavit that was presented by Ms. Sutterth in the civil case up in Chicago and may have contained a false statement. On cross-examination of Ms. Sutterth, the government asked absolutely no questions whatsoever. So they were charged under the statute and under the jury instruction. The questioning about cash versus accrual, that was from her lawyer, not from the government? Say that again, Your Honor, I'm sorry. She did talk about cash versus accrual in her testimony. You're saying that wasn't questioning from the government, it was questioning from somebody else? I was the lawyer. I don't even think I asked her about this topic at the trial, and the government certainly didn't cross-examine her about the topic. The government cites it in their brief, I think. We'll hear from them. She might have mentioned, by my recollection, she had tax returns that had been prepared in a pro forma way that were based on a cash method accounting. Wasn't that the question from the jury? Didn't the jury, your third argument, there was a question from the jury. Can we get her testimony on cash versus accrual? Yes, Your Honor. On the first day of deliberations, January the 15th of this year. There was some testimony from her about cash versus accrual, right? There may have been, and forgive me, there may have been in the sense that she identified tax returns that were prepared but not filed in the convention of cash basis accounting. But their question could have arisen from a lack of evidence. They didn't hear enough evidence on accrual versus cash basis. And you talked about the third issue in the brief. That was on the first day of deliberation, about 2.45 in the afternoon. Without objection, Judge Trauger answered their question that, well, we really can't give you enough information. And then the next day in the afternoon, that's when the second question came, where they were obviously struggling to make a decision in the case and that they were unable to reach a verdict. That's the one that the judge, I think, should have stopped her sentencing hearing or whatever else she was doing that was ancillary to the trial and consistent with the rule and consistent with the law, brought us back into court and let us know that the jury had another question. That question was never answered, right? It was never answered. We just came in, I think it was at 3.35 in the afternoon, on the second day of deliberations. You're saying a district judge has a sua sponte obligation to stop whatever they're doing when they get a question? Respectfully, I would say so, yes, sir. Where is that in the law? I think the rule contemplates that it's a pretty significant event in the course of a jury trial that if there is a question that a judge is not supposed to basically keep the question to herself, it's supposed to be a question that's supposed to be shared with the parties, particularly a criminal defendant. She didn't have an opportunity to share it with the parties and you didn't even object below, right? When she made it known, you didn't object. So the government's right, this is plain error. And there's no rule that makes it clear to a district judge or a case that they have to stop what they're doing and deal with a question immediately. Because I've sat on trials where you get 50 questions and you're in the middle of a sentencing, you're saying that judge has to stop the second? Because sometimes you don't get notified, in fact often, when you're on the bench sentencing until you walk off the bench. If she was notified, then I think the better practice . . . Was she? This is plain error review. Well, when we came in to get what we thought was going to be the verdict, she was very interested in shuffling that jury in and getting the verdict. There was, in my own defense, not really much of a chance to even reflect on . . . Did you put it on after the case? I did not, no. Did you file a post-judgment motion? I did not. But, frankly, that's not the most significant issue that we raise here on appeal. Can I ask you one . . . I see your time is running out, but can I ask you one question on the Counts 17, 18, and 19? Did the government talk about them in their closing? Not much, if they did at all. I thought it was interesting. She was acquitted of 17, and the false declaration there was that she did not misrepresent anything to ECHO with respect to the sale of Shipper Direct or any other business. Not guilty. And then she's found guilty after they struggle on a metaphysical issue about cash versus accrual accounting. And it's in my brief, but it really turned out to be a distinction without a difference. Their controller who testified said it made no difference whatsoever to this transaction. So I don't see how it could have in any way had any influence on the district judge in the Northern District of Illinois. I think it was an afterthought up there as well. Thank you very much. Good morning, Your Honors, and may it please the Court, Rasko Dean on behalf of the United States. This appeals about three issues, whether there's sufficient evidence of actual falsity and materiality to support the defendant's 1623 conviction, whether venue existed in the Middle District of Tennessee for Count 18, and about whether the district court properly handled a jury note. I'm going to address all three issues, but I want to begin by talking about the evidence that supports the defendant's 1623 conviction. And before I touch on the merits of that claim, let me start by noting one defect that we failed to identify in our brief. The defendant argues on appeal that the evidence was insufficient because of inadequate proof of falsity and materiality. But at trial, the defendant made a Rule 29 motion to dismiss Count 18 and made a venue-based argument and did not raise any sufficiency-based claims, which means that she's waived those challenges under United States v. Osborne and United States v. Wesley. Now- Did you forfeit the forfeiture? Your Honors, certainly the Court could find that, and I don't know if it's because of the expedited briefing schedule or why we failed to raise this claim, but we certainly did fail to raise it in our brief. But that, I mean, it's pretty clear from the record that it says that, that they made the argument based on venue. So why shouldn't, I mean, you're asking us to hold the defendant to forfeiture and at the same time asking us to waive your forfeiture. Certainly, Your Honor, and I think I just wanted to raise it for the Court. We certainly did not identify it, and it was plain from the record we should have done it. Turning to proof of falsity, there's sufficient evidence in the record for any rational juror to find that the defendant here made a false statement about the accounting method that her company used. There's ECHO Global Logistics CFO Kyle Sauer's testimony where he says the defendant gave him reports that were created on an accrual basis. There's the defendant's own testimony about giving a report to ECHO Global Logistics created on an accrual basis, and then- When is that stuff consistent with her declaration where she said they asked me for it in an accrual basis? Your Honor, I believe she, as I understood the trial testimony, she gave them the accounting statements, financial statements on an accrual basis, and in her declaration she states, and I'm quoting from it, paragraph 6, we did our accounting on a cash basis, but ECHO wanted the numbers to reflect accrual, so two ECHO employees actually created the accrual numbers. And the testimony at trial is that ECHO didn't create anything. The accrual numbers were actually given to them. So exhibits 1 and 2 were created by her or created by them? As I understand it, created by her. What's the evidence at trial that exhibits 1 and 2 were created by her? I believe, and I would want to go back and look at the record, that Kyle Sowers testified that he didn't create anything, didn't recreate any SHIP or DIRECT statements using a different accounting method. Okay. She says Sowers and Bloss, right? Yes, Your Honor. Okay, so can I ask you a separate question? Was the lie, the perjury, that she did all her accounting on a cash basis or that Sowers and Bloss created the accrual numbers? That she did all her accounting on a cash basis, and that's what's reflected in the indictment, Your Honor. Okay, yeah, that's what I thought was reflected in the indictment. So if she prepared them because they requested it, that wouldn't be perjury? If she prepared them because they requested it. In accrual basis. And otherwise they only did accounting on a cash basis. I don't think that is the facts that are in the record, but I would still argue that could be perjury because she's saying here that... Wait a minute. That would be count 17 perjury, wouldn't it? Yeah. It wouldn't be count 18. It would be count 17. Yes, Your Honor. That's correct. That's correct. Okay, and she was acquitted of that. She was acquitted of that. Yes, Your Honor. She was acquitted of that. And moving on to materiality, the statement's also material, and it's because it either influenced or was capable of influencing the district court in the Northern District of Illinois. And here the context matters, and that is you have a declaration that was filed as part of a memorandum in support of a motion to vacate a default judgment. And at trial, the defendant's civil attorney testified that this declaration went to the merits of... Is it the declaration itself that has to go to the merits or the falsity? It's both, Your Honor, but the falsity's contained within the declaration. Right, but the falsity has to be material. Yes, Your Honor. And so let's say the whole declaration's true except for this. Yes. And I thought Sowers testified it didn't matter whether you did it ultimately in cash or accrual. He did, and that actually supports our theory of materiality because I think anyone with a working knowledge of accounting principles will tell you that if done properly, cash accounting and accrual accounting at the end of the day are going to get you the same numbers. Inputs come in at different times. So explain to me why that supports your theory of materiality. Well... As to why this statement is material. Right. I did it on a cash basis because let's assume she did it properly. Yes, Your Honor. Then why would that be? I'm not sure I thought... Because, and this gets us back to context, because you have what she, this declaration was filed in an attempt to vacate a default judgment. And as part of that, you have to show a meritorious defense. And so her defense to a civil fraud claim and a breach of contract claim was, you know, this is a misunderstanding. It's an accounting issue, and so it's a bad lie. And I think the district judge could probably quickly recognize it and anyone with a working knowledge of accounting principles could, but it's still a lie that is material under 1623. But that would cover any false statement you make to a court in a document. Because why would you do it if you didn't think it was going to influence the judge? Doesn't it have to involve something more than that? I think it just has to be capable of influencing the judge. And so certainly anything that is going to the merits would have that capability. Anything in the declaration that was false would be material then, right? Because by definition I'm submitting it with a motion to reconsider. I'm trying to change his mind. Everything I put in there I'm assuming is in there for a reason. So it would all there, you know, ipso facto, it's material, right? If it's going to the merits, I think that's right, Your Honor. Can I ask you one more question? Yes, Your Honor. Did the government tie Exhibits 1 and 2 to the Asset Purchase Agreement? So they say in the Asset Purchase Agreement they have some statement about preparing it in accordance with our accounting practice, and you say that there's evidence she prepared 1 and 2. Was there any testimony that that was prepared as part of the Asset Purchase Agreement or something to that extent? Your Honor, I don't know off the top of my head. I can certainly follow up with the court and provide an answer to that. Okay. All right. I apologize. That's all right. And going back to your question, Judge, you know, there are a number of cases where you have a statement to a court that is instantly recognizable as false. And even though it's instantly recognizable as false, courts have still determined that under 1623 it is material, which I would argue in this case you have a statement that is very quickly recognizable as false. It's still material because it was capable of influencing the court's decision on the merits. Why is it quickly recognizable as false? Well, because if you have a working knowledge of, I think, accounting principles, you'd understand that there's no the bottom line numbers between cash and accrual accounting should not be different. I don't follow why that helps you, though. So who cares if she said that they use cash and she's lying and they actually used accrual? And, oh, my God, this is a huge lie. You're using accrual and not cash basis. And it's so what? Why is it material? Why is it a material lie? Like why, I mean, you can think of all kinds of things you can lie about that would be material. What accounting method you use seems insignificant here. Yes, Your Honor, but it goes to, it went to the merits of her defense in that civil suit that our method of accounting explains the plaintiff's claims of breach of contract and fraud. So let me, so I'm having the same struggle. So I get your point is perfectly valid that maybe she did cockamamie accounting. OK, but I don't understand why it's material to say I did. You have to assume for this hypo, not for the case, for a second, that cash and accrual produce the same numbers. Yes, Your Honor. Which you say is consistent with good accounting. Yes, Your Honor. So then if you say I do it in cash basis or I do it in accrual basis, who cares? The statement standing alone, I agree, but it is, this was made, this went to the merits of her defense. And her defense was because we did different methods of accounting, that explains the discrepancy in numbers. But that seems to me the lie, that because we did different methods of accounting, it explains the discrepancy. That's, right, that's a lie. Because the, but not whether I do it in cash or accrual, it may be a lie, but it's not material. It is. Why am I struggling with this? No, I understand. It makes sense that you're struggling with this, but I would argue that the lie, cash versus accrual, it's a part of the kind of the bigger scheme that we just talked about. I mean, the context matters here. I guess that's what I'm trying to get at. The context when this was said matters. Okay. All right. But there was no, was there a witness at trial that said, I have looked at their books or their tax returns or their ledgers or whatever it is, and I have determined that they use a cash basis accounting system. Did anybody actually say that at trial? No, Your Honor, not to my knowledge. That Shipper Direct uses cash. Yes. Not to my knowledge, Your Honor. So we're just piecing together these exhibits that say accrual on them and trying to figure out and infer who prepared them and whether they actually reflect the accounting method that Shipper Direct is using? Yes, although there is testimony from individuals who dealt with the defendant and, I believe, from the defendant herself saying, she either prepared things using the accrual method or I gave a statement to ECHO Global Logistics using the accrual method. Just briefly, turning to venue, before I reach the merits of the defendant's argument there, the defendant's also waived the venue argument. And the defendant's done that because she made a Rule 29 motion at trial as to venue, and Federal Rule of Criminal Procedure 12B3A1 requires that venue claims be raised prior to trial. The venue claim was available here. You can see it from the face of the indictment. And the defendant did not raise it until the Rule 29 motion, and when asked why by the district court, said they did it for strategic reasons. Can I go back? Yes, Your Honor. Unless someone has a question about venue. So I have one question I struggled with. The Count 18 charges that all accounting for her business was done on a cash basis. Throughout your brief and argument, you point to paragraph 10. Why isn't this related to paragraph 6? Why isn't this related to paragraph 10? I'm just curious. Paragraph 10 of the declaration? Yeah. Because the language is identical. And so I struggled with that when I was preparing. I just don't understand. Everyone's arguing about paragraph 6. Paragraph 10 used the exact language of the indictment. Yes, Your Honor. It looks like from, and I had not noticed that before, looking at paragraph 6 and paragraph 10, they appear almost identical and they almost restate the same point. Okay. And I don't know why the... So there's no material reason I should worry about that? Not to my knowledge, Your Honor. Okay. Not to my knowledge. Can I ask you one other just hypothetical question? If the government does not present a theory to the jury below, can we use that theory to affirm on appeal? Yes, you can, Your Honor. And it's because the theory that I've presented to you today, the jury could infer from testimony in this case. And I'd specifically point the court to Mr. Preston's testimony, who was the defendant's civil attorney, who stated that this declaration and the statements in it went to the merits of the defense in the civil case in the Northern District of Illinois. Doesn't that seem a little unfair to defendants where we hold them to forfeiture all the time but the government can get away with forfeiting things? You don't present a theory, so the jury, we have to assume the jury came up with it and convicted on it, even though the government argued something else in closing? Well, to my understanding, what the government argued in closing is to Count 18. They didn't make an argument. We did not make an argument as to materiality specifically in Count 18. But I think juries... Is that a problem? If I could go back and do it again, we'd do it differently. But juries can certainly infer things from the record, and the attorney's statements are in the record. I see my time is up. Unless there are any further questions, I'll rest and ask that you affirm the judgment. All right. Thank you. Just very briefly on a couple of points. I think Mr. Dean had the good fortune of not trying the case in the district court, but the jury never heard a witness from Echo Global Logistics say that if you have a working knowledge of accounting, that you could somehow piece together that Count 18 was a false statement. I did want to direct the court's attention to a statement that is in the record. It's RE 159, page ID 1591 to 1592, where Kyle Sowers, the controller, testified, quote, Echo actually prepared the balance sheet starting with the, and it's a little truncated, column that says June 30 is provided. So that's the balance sheet that came from Angela. Did Sowers testify that he did not prepare Exhibits 1 and 2? I thought he did. Your Honor, as I stand here right now, I just don't remember. If he did testify to that, do you lose? I don't believe so. It's still not a material false statement on this record. There's no explanation to the jury how it was false, and her testimony was unimpeached on that. In terms of the venue, if you all want to, I just wanted to address the question of waiver. The government speaks about Rule of Criminal Procedure 12B3AI, that it must be, and as you all know, the rule was amended in 2014, and it now says it must be raised by pretrial motion if the basis for the motion is then reasonably available and in the conjunctive the motion can be determined without a trial on the merits. So that introductory language of the rule still includes those two very important limitations. So I don't believe it was waived under 12B3AI. Thank you. Thank you very much, and the case is submitted.